NOTE. Estate of Deceased Partner—Liability for Partnership Debts—The estate of a deceased partner is under no liability for partnership debts, while the surviving partner is solvent. Troy Iron & Nail Factory v. Winslow [Case No. 14,199], approving case in text.
[Prior to this, in 1808, a motion was made for the appointment of a guardian to Peleg P. Sanford, who was a minor. The motion was denied on the ground that the petition was not properly drawn up. Case No. 11,739.]

PENDLETON (TEN BROECK v.). See Case No. 13,827.

## Case No. 10,924.

### PENDLETON v. UNITED STATES.

[2 Brock. 75.] [1]

Circuit Court, D. Virginia. Nov. Term, 1822.

EVIDENCE — LETTER FROM WAR DEPARTMENT NOT AUTHENTICATED AS PRESCRIBED BY CONGRESS— ERROR — FACT NOT STATED IN BILL OF EXCEPTIONS.

1. In a suit brought by the United States against the representative of a surety of M. and H.. contractors to furnish rations to the troops of Virginia and Maryland, for the year 1802, a letter from the department of war, not authenticated in the form prescribed by the act of congress, claiming advances made to the principals, up to the 6th of January, 1803, is inadmissible in evidence, and no admission of its correctness, express or implied, by the principals, can bind the surety.

2. Where a cause is removed from an inferior to a superior tribunal, by writ of error, no fact, not stated in the bill of exceptions, will be noticed.
[Cited in U. S. v. Jarvis, Case No. 15,469.]

[Error to the district court of the United States for the district of Virginia.]
At law.

MARSHALL, Circuit Justice. This is a writ of error to the judgment of the district court, obtained by the United States against the plaintiffs in error, for the sum of $496.08, with interest from the 30th of September, 1808. Philip Pendleton, the testator of the plaintiffs, had become bound to the United

States as security for Michael McKewan and Daniel Hanagan, who were contractors to furnish rations to the troops in Virginia and Maryland, for the year 1802. This suit is brought for the balance of moneys unaccounted for, which was in their hands on the last day of December of that year. The breach assigned in the declaration, is the non-payment of $1,159.89, being the balance due from the said McKewan and Hanagan on the 31st day of December, 1802.

In support of this action, the attorney for the United States, offered in evidence a certificate from the treasury department, certified by the comptroller on the 3d day of October, 1821, stating, that, on a settlement of the accounts of Michael McKewan and Daniel Hanagan, late contractors for supplying the troops stationed in Maryland and Virginia, they are chargeable—

| | |
|---|---|
| To balance remaining in their hands for moneys advanced from the 22d of October, 1801, to the 6th of January, 1803, per report No. 15129... | $1,159 89 |

The same paper contains the following credits—

| | |
|---|---|
| On the 30th of June, 1808 | $230 00 |
| On the 30th of September | 306 00 |
| | 536 00 |

Leaving due to the United States $ 623 89

This paper was objected to by the counsel for the defendants, and was rejected by the court, because it claimed a gross sum of $1,159.89, for moneys advanced up to the 6th of January, 1803, to McKewan and Hanagan, whereas, the defendants were liable only for moneys advanced up to the last day of December, 1802. The attorney for the United States then offered in evidence an affidavit made by the defendant, Philip Pendleton, December 1st, 1818, for the purpose of obtaining a continuance, in which he states, among other things, that during the pendency of the suit, and prior to the year 1810, he, with the other security in the bond, caused sundry payments to be made to an amount about equal to the sum stated to be due, after deducting therefrom the sum of $392.54, or thereabouts, which was obviously, he thinks, an unjust charge against the securities. The vouchers for these payments were placed in the hands of Mr. Williams, with other documents, a gentleman then practising at this bar, who is since dead. After the death of Mr. Williams, a judgment was obtained, without any appearance for the defendant for upwards of $2,000, which, on his motion, was set aside, and a new trial granted. The affidavit then states, that a search was made among the papers of Mr. Williams, which resulted, as he is informed, in finding a statement made by Mr. Hay, the then attorney for the United States, admitting the incorrectness of the charge as against the sureties, a certificate of the treasurer of the United States as to the payment of $160, on or about the 31st day of October, 1803, and a letter from the affiant to Mr. Williams, dated the

20th of April, 1809, in which he says: "1 send you two receipts and a letter, evidencing the payment of $696 of the judgment." These papers, the affiant says, are, as he is informed, mislaid, and he prays a continuance for the purpose of endeavoring to replace them.

The attorney for the United States also offered to read a letter from William Simmons to Michael McKewan, in these words:

"Department of War, Accountants' Office, January 15th, 1803. Sir: I have to acknowledge the receipt of yours of the 10th instant, with the papers, * * * of which have been admitted, and your accounts as contractor for the year 1801, and of yourself and Daniel Hanagan for the year 1802, finally closed, leaving a balance due to the United States in each, to wit:

| | | |
|---|---|---|
| From yourself, as contractor for Virginia for the year 1802............. | $ 408 | 76 |
| From yourself and D. H., and contractors for V. and M. for 1803... | 767 | 35 |
| | $1,176 | 11 |

—For which you are to make immediate payment to the United States. William Simmons."

The counsel for defendant objected to the admission of this account from the treasury department, and of the letter from Mr. Simmons, which objection the court overruled, "being of opinion, that the document from the treasury department was capable of being explained to the satisfaction of the jury, by reference to the letter from William Simmons to Michael McKewan, which letter was found by the attorney for the United States this day, among the papers filed in this case in this court, and because from inspection of the same, the court is satisfied, that the same was probably brought into court many years ago, and has remained among the papers in this cause, as being produced originally by the said Michael McKewan, an original party in the cause to whom the same is directed."

To this opinion the counsel for the defendant excepted, and the judgment is now before this court on writ of error. The letter from Simmons to McKewan, not being authenticated in the form prescribed by the act of congress, derives no aid from that act, and the question concerning its admissibility is consequently dependent on general principles of law. The record contains no evidence that Michael McKewan was ever a party to this cause. The declaration is against the executors of Philip Pendleton, deceased, who was one of the sureties of McKewan and Hanagan. I must presume, from the statement of the judge of the district court, that a suit was originally brought against all the parties to the bond, and that on the death of Philip Pendleton, one of the obligors, this suit was brought against his executors, and that this paper was found in the original suit.

It is not stated by the judge, nor does it in any manner appear, that a trial ever took place as against McKewan, that this paper was ever read in evidence, or that it was filed with the permission of the court. In what light, then, is this letter to be considered? I am by no means satisfied that it is not the paper of McKewan, which he would be at liberty to withdraw at his own pleasure, and would not be compellable to use. If seized by the attorney for the United States, he could not use it as evidence offered by McKewan, but as a letter addressed to and received by him. But if I am wrong in this, still it only establishes the amount of the claim against McKewan and Hanagan, and does not show with sufficient precision, that the sureties were liable for the whole of the claim. The documents show, that on the books of the treasury, the sums for which the sureties are not liable are blended with those for which they are liable, and that the whole is claimed from them. The account certified by the comptroller, claims for moneys advanced to the contractors up to the 6th of January, 1803, without specifying the dates at which the several advances were made, or showing how much was advanced after the last day of December, 1802. The letter of the war accountant is dated after the 6th day of January, 1803, and states a balance to be due, varying from that contained in the account certified by the comptroller, but omits to state, that it was wholly due for advances made on or prior to the last day of December, 1802. It is said, that an inference may be fairly drawn from a comparison of these accounts, that the balance claimed in the letter of Mr. Simmons was due for advances for which the sureties are responsible. But inferences may be drawn either way, and this is not a case which ought to be left to uncertain inferences. The books of the treasury ought to show with precision and certainty the several periods at which the money was advanced, and an abstract from the books would be evidence in the cause. A court ought not to reason on a letter not explicit, and draw from it doubtful inferences, when the party requiring this course has in his possession testimony which would dispel every doubt. If the letter does not show, when accompanied by the account certified by the comptroller, that all the money it claims was advanced before the 1st of January, 1803, then no acquiescence in it by McKewan, no admission of its verity, implied or expressed, can effect the security. McKewan's admissions show only his own liability; but if that is more extensive than the liabilities of his securities, they cannot be affected by admissions which apply to the claim against him generally, without discriminating between those parts of it which affect the sureties, and those which do not.

Upon these reasons, I am of opinion that the letter of Simmons does not explain, with the requisite clearness, the account certified

by the comptroller, and ought not to have been admitted. I am not unmindful of the allegation made by the attorney for the United States, that the papers which would explain this transaction are burnt, and cannot be produced. But this fact is not stated in the bill of exceptions, and cannot be noticed. I can no more take it into consideration than I can the indorsement on the letter controverting the amount it claims, and, consequently, destroying every implication arising from its being considered the paper of McKewan. I must consider it as a paper, equivocal in itself, produced by a party in possession of testimony which is unequivocal. The judgment must be reversed.

---

PENDLETON (VAN HOOK v.). See Cases Nos. 16,851 and 16,852.

PENELOPE, The. See Case No. 16,946.

PENELOPE, The (LAMAR v.). See Case No. 8,007.

PENELOPE, The (LOCKE v.). See Case No. 16,946.

PENELOPE, The (McQUIRK v.). See Case No. 8,925.

PENELOPE, The (UNITED STATES v.). See Case No. 16,024.

PENELOPE, The (VINCENT v.). See Case No. 16,946.