JOHN P. COLES VS. CHARLES KELSEY — Appeal from Washington County.

A peremptory exception cannot be received after answer.

The practice of filing pleas at different times after the answer has been filed, without first obtaining the leave of the court, is an irregularity not to be sanctioned.   [5 Tex. 255; 11 Tex. 253; 14 Tex. 490.]

If a cause of action appears on its face to be barred by the statute of limitations at the commencement of a suit, and the plaintiff relies upon a subsequent promise to remove the bar, he must allege that promise in his petition as the foundation of his action, and set out the original cause of action only as the consideration for the subsequent promise.   [9 Tex. 73; 30 Tex. 102.]

If the petition shows on its face that the cause of action was barred at the commencement of the suit, the defendant need not plead the statute in bar, but may avail himself of it under exceptions or demurrer.   [4 Tex. 422; 5 Tex. 391.]

A replication to a plea of the statute of limitations setting up a subsequent promise to remove the bar is bad, if it appear on the face of the petition that the action was barred at the commencement of the suit, because it is setting up a cause of action other than that upon which he relied when he brought his suit.

It is of no importance whether the subsequent promise was made before or after the bar was complete under the statute.   If the plaintiff relied upon the subsequent promise to remove the bar, in either case he must declare upon that promise in his petition.

A subsequent promise to remove the bar of the statute must not only contain an acknowledgment of the debt, but it must express a willingness to pay it.   [8 Tex. 444.]

A letter containing the acknowledgment of a debt and a promise to pay will be construed to have been intended to apply to the debt upon which the suit is brought, it existing at the time, in the absence of proof of any other transaction between the parties to which the letter might have applied.

All the important facts adjudicated in this cause being [542] stated in the opinion of the court and the dissenting opinion, the reporters deem it unnecessary to give a farther statement of them here.

*Webb*, for appellant.

*J. Willie*, for appellee.

Mr. Justice LIPSCOMB delivered the opinion of the court, Mr. Justice WHEELER dissenting.

The appellee filed his petition against the appellant in the district court of Washington county on the 11th day of May,

1846, in the following words, i. e.: "To the honorable the judge of the third judicial district: The petition of Charles Kelsey to your honor showeth that John P. Coles, of the county aforesaid, on the 4th day of March, A. D. 1840, executed his certain promissory note in the words and figures as follows, to wit:

'Washington, 4th March, 1840. Two years after date I promise to pay Charles Kelsey, Esq., or order, fifteen hundred dollars, for value received.

(Signed)                                    'JOHN P. COLES.'

"And on the same day the said John P. Coles execu·ed his certain other promissory note in figures and words as follows, to wit:

'Washington, 4th March, 1840. Twelve months after date I promise to pay to Charles Kelsey, Esq., or order, fifteen hundred dollars, for value received.

(Signed)                                    'JOHN P. COLES.'

On which last aforesaid promissory note is the following indorsement, to wit: "Pay to the order of James E. Kelsey, signed Charles Kelsey — James E. Kelsey." And your petitioner alleges that he is the owner and holder of both of the said promissory notes, the latter note being transferred as aforesaid, by indorsement. By means whereof the said John P. Coles has become liable to pay to your petitioner the sums of money expressed in the two promissory notes, [543] with interest from the time they became due, to wit: upon the first of said notes from the 4th day of March, 1842, and on the last from the 4th day of March, 1841. Yet the said John P. Coles, though so indebted and liable as aforesaid, has not paid said amount or any part thereof, by which failure to pay, as the said Coles is bound by the terms of said notes, your petitioner is damaged in the sum of four thousand dollars; therefore he brings his suit, and prays that the said John P. Coles be summoned to appear at the next term of your honorable court, and that your petitioner may have judgment for his debt, damages and cost, and as in duty bound, etc.

(Signed)   "J. WILLIE, Att'y for Plaintiff."

On which petition summons issued on the 16th day of July,

1846. On the 3d of December of the same year, the following answer was filed, i. e.:

"And now comes the said John P. Coles, by attorney, and for answer says that the causes of action mentioned in the plaintiff's petition did not accrue or arise at any time within four years next preceding the commencement of the suit or the filing his said petition, nor did he, the defendant, at any time within four years before the commencement of suit, promise or assume to pay the promissory notes mentioned in said plaintiff's petition, or either of them, and this he is ready to verify, etc.

(Signed) "WILLIAMSON & WEBB, for Defendant."

There were several other pleas filed, as appears upon the record, some ten or twelve days after the above, but by what authority does not appear. There does not appear to have been leave given by the court to amend, and the first of them is a peremptory exception, which could not be received after answer; they will not, therefore, be noticed, further than to take the occasion to remark that the practice of filing pleas at different times, and after the answer has been filed, without first obtaining the leave of the court, is an irregularity not to be sanctioned, and calculated to perplex and leave it uncertain whether such pleas were received and went to [544] the jury or not. When the case went to the jury, after the plaintiff's counsel had read his petition, and the defendant's attorney his pleas, the plaintiff's attorney read the notes sued on; he then called a witness and proved the handwriting of the defendant to the signature of a letter addressed to the plaintiff, dated 13th May, 1842, which letter he read to the jury as evidence The letter is in substance, so far as material:

That he was sorry that it was not in his power to have done anything for the plaintiff up to that time. That every exertion will be made on defendant's part to pay plaintiff as soon as he can; that defendant has been engaged in settling a farm on the Brazos, which was found to be a laborious business, and from which nothing had been realized, but that there was a prospect of a fine crop that year; that there is no money in the country; that the bills in circulation are doubtful and

many of them valueless, and when offered that it was not known whether they ought to be received or not. He hopes to be able to make a payment that winter; that war with Mexico had again commenced, unknown to what extent the injury may be from it; everything dull; land not selling, except a small tract occasionally on time.

There was a verdict for the plaintiff for the amount of the notes, and interest. The defendant made a motion for a new trial, on the ground that the verdict was contrary to law and evidence, which was overruled by the court, and the defendant appealed.

The appellant mainly relies on one ground for reversing the judgment of the court below. That the court erred in permitting the letter from Coles to Kelsey to go to the jury.

The most important points presented by the record are: Was the subsequent *acknowledgment*, supposed to be contained in the letter of the appellant to the appellee, evidence under the state of the pleadings in this case? And secondly, was the letter a sufficient acknowledgment, under the statute, to take the case out of its operation? We will take [545] up the questions in the order they have been here presented. It is important to examine how this question would be disposed of under the decisions made in the common law courts, and, as our statute is not materially different from the English statute of 21, James I, chap. 16, sec. 3, only ours providing for the bar intervening at the expiration of four years, and the English six, from the accrual of the cause of action, to inquire how the statute was taken advantage of in the courts of England, it will be more necessary to look into these authorities, because the statute of most of the states has been borrowed from the statute of James, and the decisions of the courts in those states have followed the English authorities.

In the 2d Saunders, 63, note 6, on the case of Hodsden v. Harridge, we find the following remarks by Sergeant Williams: "And indeed at first it was not considered necessary for the defendant to plead this statute; for in Trinity term, 4 Corolus, 1, which was soon after the making of the act, a motion was made in arrest of judgment in assumpsit, that the

promise was alleged in the declaration, to be made beyond the time limited by the statute, and all the court held, that if it appear by the plaintiff's own showing that the action was not brought within the time limited by the statute, he cannot maintain his action; or if the contract in assumpsit or debt be alleged to be within the time, but on non-assumpsit or *nil debet*, pleaded, it appears in evidence that the contract was beyond the limited time, the action lies not and the defendant shall take advantage thereof, if it be specially found by the jury; for the statute is in the negative, "that he shall not maintain such action but within the time limited by the statute." Croke Car. 115, Brown v. Hancock, and in the cases of Freeman v. Stacy, and Shewin v. Cartright, Hut. 109. It was so holden on special verdict."

The same objection having been made in a subsequent case, the court was equally divided upon it, Jones and Whitlock, justices, being of opinion that as the statute has [**546**] many exceptions, the defendant ought either to plead it or demur; and Hyde, chief justice, and Croke, justice, conceiving that as it appeared in the declaration that the contract was beyond the time of limitation, and the statute is in the negative, that it shall not be brought, the defendant might take advantage. Croke Car. 163, Tankersly v. Robinson. About five years after, in a motion in arrest of judgment, it was adjudged by Jones and Berkley, the only judges in the court, that the statute must be pleaded, and the reasons given were, that the plaintiff might be within the exceptions in the statute. Croke Car. 381, Stiles v. Finch. The reasons assigned for requiring the statute to be pleaded, in Levinz, 110, Lee v. Rogers, is that the statute was made for the ease of those who will take advantage of it, and the court will not give a defendant the advantage of it unless he plead it, seems somewhat questionable; and to say the least of it, it rests upon the assumption, on the part of the court, as to the object of the statute, scarcely warranted by a fair interpretation thereof; we will see, by and by, if a better reason has not been given. It is clear from the authority cited that the statute could be taken advantage of by the defendant for some time after its enactment without plea or demurrer,

that the first objection did not go the length of excluding a demurrer; but it was insisted the defendant should be either required to plead or demur, and finally, that he should be confined in his defense to pleading it, and this has been the uniform practice in the English courts and in the United States courts of common law. But not always for the same reasons, and this will be seen by an examination of the discussions on the subject, of the true character and effect of a subsequent promise when relied on to take a case out of the statute of limitations, it being contended by some that the new promise is a revival of the old undertaking, and by others that it is a new and distinct contract, reference being had to the old promise only, for the purpose of showing [547] a good consideration to support the validity in law of the subsequent promise.

The question was discussed with great ability in the appellate court of South Carolina, by Judge Oneal, who delivered the opinion of the court in the affirmative of the latter position in the case of Reynee v. The Executor of Desporte, Executor of Doyea, Dudley, 119.

The judge says: " Is the old debt, or the new promise, the cause of action? It is a question of great importance both on account of the general interest of the community in it, and also on account of putting an end to one of the most vexatious questions that has been discussed; uniformity and harmony between the decisions of the courts as establishing rules of action, both for the citizen and practice of the courts, is also a most desirable end to be attained by this decision if practicable. In deciding upon the statute, no rule is more universal than that it is the duty of the court to expound it as it is, and not as we might think it should be. The statute of limitations has for a long series of years been the subject of eulogy or blame, by the different persons who have been called in to discuss it, as fancy or the circumstances of the case dictated; generally in all modern cases it has been regarded by the ablest judges and soundest lawyers as founded in a wise policy, and to be sustained and enforced according to its letter, and not frittered down by distinctions unauthorized by its provisions. It is a little remarkable that in the variety of decisions

on the statute of limitations in relation to actions of debt on simple contract and assumpsit, until very recently, how completely have its provisions been overlooked. Anything that admitted the debt ever had an existence, was held to be enough to take a case out of the statute of limitations; this capricious, and, I might say, dangerous current of decisions has at length been arrested, and the judges of the court of this state, the United States, of New York, Pennsylvania, and of England have about the same time abandoned the rule, and have returned to the [548] statute to ascertain in what cases it shall or shall not operate as bar. The statute directs that the action of debt, on simple contract and assumpsit, shall be brought within four years next after the cause of action or suit, and not after. The words of the statute are of plain and obvious meaning, and to give them effect, only two questions need be asked. When did the cause of action accrue? Is the suit brought within four years from the accrual of the cause of action?

"In all cases where there has been no intervening disability, the answers to these questions would enable us at once to say whether the bar of the statute precluded the plaintiff's recovery or not. When did the cause of action accrue? By ascertaining when suit could have been brought upon it, in assumpsit and debt upon simple contract, from the time when the debt fell due; consequently upon that is the right to demand the payment, and to institute suit if not paid. If more than four years intervened between the time at which the party, by his contract, had a right to demand the payment, and institution of the suit, the bar of the statute is complete and effectual, and the cause of action is gone; but the old debt is a past consideration and will support a new contract; for notwithstanding it cannot be legally enforced as a cause of action, yet, if it has not been paid, the party who contracts it is in honesty bound, which is but another name for one branch of good morals. The obligation of honesty and morality is a good consideration, and the promise made upon it will be enforced.

"But it is a new cause of action, and not the revival of the old one; for, if not regarded as a new cause of action, the
(485)

words of the statute would prevent it from enabling the party to recover. Regard it as a new cause of action, and the case is neither affected by the intent or meaning of the statute. This plain, but I think obvious meaning of the statute, makes it easily understood and easily to be applied to all future cases. The only reason which can be assigned why it was ever supposed that the old debt, and not the new [549] promise, was the cause of action, is that in *counts indebitatus assumpsit*, on a note or bill of exchange, the precedent indebtedness, in the first, the making of the note, the drawing, accepting or indorsing the bill in the second, and the consequent liability to pay, is stated as the consideration of the legal liability to pay. In it the true time is wholly immaterial, and of course any promise between the consideration and the suing out of the original writ can be given in evidence as between the parties to the contract. Hence the new promise being received in actions of this kind, as corresponding with the *allegata*, it was easy to suppose and conclude that the old debt was revived and was the cause of action; this view, too, was much encouraged by many loose expressions of that kind to be found in the opinions of some of the most learned judges." He then proceeds to review the cases of Pitam v. Foster, and Norris and Wife, 8 Eng. Com. L. 67; Scales v. Jacobs, 13 Eng. C. L. 85; Tanner v. Smart, id. 273; and Hurst v. Parker, 1 B. & A. 91, to show that whatever had been the former decisions of the English courts, the more recent adjudications supported his views. For the same purpose, he refers to the case of Sands v. Gelston, 15 Johns. 519; the cases of Bell v. Morrison, 1 Pet. 360; Young v. Mompoey, 2 Bailey, 278; Grist v. Newman, 2 Bailey, 92; Cohen & Nesbit v. Aubin, id. 283; Trawell v. Salmon, id. 308; Lowry v. Dubose, id. 425; Glem v. McCullough, 2 McC. 212; James v. Lindsey, 4 McC. 93; each of which the learned judge reviews, and shows that in principle he is sustained by them. The case from which I have drawn so freely was brought on a promissory note by the assignee, and he relied on a promise made to his assignor; it was ruled that the action could not be sustained, because the promise made to the assignor was not assignable; if the new promise

had revived the old debt, the action could have been sustained. In the same case the court decided that "where a subsequent promise made by an executor was relied on to take the case out of [550] the statute, the plaintiff must specially count on such new promise, as it could not be given in evidence, either on the count upon the note or the *indebitatus assumpsit* count." It seems to me that Judge Oneal has been entirely successful in establishing his opinion so firmly by reason and authority, that it cannot be shaken, at least so far as applicable to cases in general, of a subsequent promise to remove the bar. If in the case we have under consideration, the suit had been prosecuted under the common law forms, the evidence of the supposed promise in the letter of the defendant to the plaintiff could have been received, though not specially counted on, because it would have been good evidence under the common *indebitatus assumpsit* count, as we have seen, although the count on the note itself would show that it was barred. In our practice of trying suits on petition and answer there are no fictions, and nothing can be admitted in evidence to support another and different cause of action from the one stated in the petition; and consequently it seems, even on the principles governing the common law declaration, the new promise, or any other exception to the bar, should be averred by petitioner. We have seen that when from any peculiarity in the subsequent promise, such as not being between the parties to the suit, it was required to be counted on specially, because it was not admissible evidence under a common count; and cases of this sort are found in the books, where, for this error of receiving such testimony under the *indebitatus* count, the judgment has been reversed, and leave given to add a special count in the declaration. It would seem, therefore, to follow as a necessary consequence, from the principle discussed, that where the law of the court does not permit the common counts, as it is with us, that the contract or subsequent promise should be specially averred or fully stated in the plaintiff's petition. If the new promise is the cause of action, surely it ought to be set out in the petition; if not, when the law is applied solely to the promise shown and sued on, it will appear that [551] the

plaintiff, from his own showing, is not entitled to bring suit. I do not believe that it would make any difference whether the subsequent promise be made before or after the statute had completed the bar, the promise so subsequently made would be the cause of action.

The 12th section of the act of limitations makes no exception or distinction, as to the acknowledgment to take the case out of the operation of the law, whether it be made before or after the bar has been completed. The words of the act are: "No acknowledgment of the justice of the claim made subsequent to the time it became due."

It would seem that if the suit had to be supported on the acknowledgment, that it would follow that the acknowledgment was the cause of action, whether made before or after the bar had been completed. But should a distinction be conceded, and should be thought that where the subsequent promise is made before the bar, because complete, that it would impart vitality and legal energy to the contract, dormant, and in the face of the statute dead. Yet, under our system of pleading, I should still hold that a fact so material, and one performing so important a part in giving legal life and effect, should be distinctly and affirmatively alleged in the petition of the plaintiff. And in this aspect I do not deem it material that it should be held that the subsequent promise, whether made before or after the bar of the statute had been completed, at all important.

It should be borne in mind that professedly the great object of pleading is, to arrive at certainty in the matter to be adjudicated and decided on; that the plaintiff should circumstantially charge the grounds of his action, so as fully to inform his adversary of the essentials of the complaint for which redress is sought. And the defendant, in like manner, should show the matter in avoidance or defense. This, no doubt, was the original design of pleading in the common law courts, however widely it may have been departed from in those courts, in practice.

[552] The common law courts lay down this rule: "The declaration must show plainly and certainly all circumstances

material to the maintenance of the action, for if there be two intendments, it shall be taken most strongly against the plaintiff." Arch. 108. Again: "A plaintiff should state every fact that is necessary to inform the court that his case is within the statute. If a man entitle himself by a lease, which by a proviso in a statute will be good if the ancient rent be reserved, he must show that a rent was reserved, and aver it to be the ancient rent." R. Pl. Conn. 105; Arch. Pl. and Ev. 94. Our statute of limitations, if it is to receive a literal construction, expressly prohibits a suit from being brought unless within the limited time, and I can see no reason why it should receive a more stringent one than other laws. The most eminent jurists of the present day concur in declaring that it is founded in the wisest policy, and so far from being restricted, is entitled to a liberal interpretation, and repudiate a long train of decisions, as having been decided without any regard to the true interpretation of the act. To try the petition in the case before us by these rules, it does seem to me that it does not show a cause of action by the principles of pleading in the common law courts, whatever the practice in those courts may be. The authorities we have examined were all cases in common law courts, where the cause of action is set out by the plaintiff's declaration. And I think it appears most manifest, that to apply the principles of those cases to a case in a court where the common counts were not known, the subsequent promise, viewed either as a new and distinct cause of action, or as reviving the old, ought to be specially set out as material to support the cause of action. I do not believe, however, that on this subject that we can with safety rely on common law rules of pleading, as our system of bringing suits by petition bears no analogy to the common law practice. But there is a most striking similarity in our forms to the English bill and answer in chancery, so much [**553**] so as to leave no doubt of their kindred origin. They are both derived from the Roman law, out of which grew up the civil law, which now prevails all over continental Europe with various modifications; ours came to us through the laws of Spain. Judge Story says that equity pleadings were borrowed from the civil law, or from

the canon law, which is a derivative from the civil law, or from both. Hence, at almost every step, we may now trace coincidences in the pleadings and practice in a Roman suit. Story's Equity Pl. sec. 14. The same author, section 23, says "an original bill praying relief is, as we have seen, founded upon some right claimed or wrong done by the defendant, in order to enable the court to understand the case, and to administer the proper remedial justice, as well as to apprise the opposite party of the nature of the claim and of the redress asked, and to enable him to make the proper defense thereto, it would seem indispensable that the bill should contain a clear and exact statement of all the material facts."

This is a pretty accurate description of what a petition ought to embrace in our courts; in truth, to set aside a few set phrases, mere matter of form, there is no difference in their structure. There is, however, another reason that should recommend the chancery practice to our courts as rules of pleading in preference to that of the common law courts. It will be seen that the legislature has expressly directed that suits should be brought by petition, i. e., the act to regulate judicial proceedings in civil suits, section 1: "That the adoption of the common law shall not be construed to adopt the common law system of pleading, but the proceedings in all civil suits shall, as heretofore, be conducted by petition and answer." (See Acts Congress 1840, p. 88.) Thus in express terms continuing the former practice that had grown up under the civil law. And the 4th article judicial department, section 10, of the constitution of the state, in granting jurisdiction to the district courts, directs that "it is to be exercised without regard to any distinction [554] between law and equity;" this mixed jurisdiction must doubtless still more assimilate our proceeding to the pleadings in chancery, as every cause of action must be asserted by the resort to the petition, to be modified to suit each particular case. I do not mean to be understood as maintaining that we have the chancery rules of pleading as a body, I only mean that they will be found more analogous to our system and more to be relied on, than those of the common law.

I will now proceed to inquire how a statutory bar, appearing in an original bill, would be disposed of; and how the complainant, or petitioner, should show that he was within an exception of the statute. I shall again refer to the same author, not because he is the only one on the subject, but because of the great reputation his work has acquired, and his venerable name is more familiar to the profession than any other that could be used. In section 503, Story's Equity Pleadings, after stating other objections that may be taken by demurrer, " the same rule would lie to a bill for the redemption of a mortgage after a great lapse of time. If the bill were so framed as to present the objection without any attendant circumstances to obviate it; for in this and other like cases courts of equity act upon the analogy of the law, as to the statute of limitations, and will not entertain a suit for relief if it would be barred at law. If the objection does not appear on the face of the bill it may be taken by way of plea, or by way of answer. Id. sec. 484. The same principle will apply to a bill which states a case within the statute of limitation at law, and upon which courts of equity follow the analogy of the law. For under such circumstances courts of equity hold that the objection may be taken as a defense by demurrer, and that if the plaintiff be within any exception of the statute it is incumbent on him to state it in his bill. Thus, for example, if it should appear on the face of the bill that the cause of [**555**] action, arising upon simple contract, accrued more than six years before the filing of the bill, a demurrer would lie."

This last rule is precisely in point. The petition showed on its face that the suit was brought more than four years after the cause of action had accrued.

There was no replication, nor do I believe that, if there had been one, that the plaintiff could have been permitted to have supplied the defect in his petition by setting up a cause of action in his replication when there was none shown in the petition. The defendant offered no fact by his plea that had not been shown by the plaintiff in his petition; where an answer alleges matter in avoidance of the facts stated in the

petition, a replication may well show that the matter shown in the answer does not constitute the defense under such restrictions. I have no objection to a replication, but when the defendant answers no new fact, and the truth of his answer appears by the plaintiff's own showing, he surely ought not to be allowed to allege facts in his replication, that, if in the petition, would have shown a good cause of action.

If the petition had not have shown on its face that the cause of action relied on and stated was barred at the time the suit was brought, and the statute had been pleaded, there would have been some reason for allowing a replication setting up the exception. Yet it seems the replication would have been bad, because the plaintiff ought to have stated the exception as an attendant circumstance, essential to his action; an observance of this rule would prevent surprise by presenting all the facts material to the right of action. And I cannot discover any thing in reason, or well established precedent, why it should not be required. In this case there was no replication of the subsequent promise, nor was it necessary under common law practice, as established in the English courts, although it was frequently done, and perhaps where there was no common count in the declaration. Or if the subsequent promise was made to one not a [556] party to the suit, it would have been thought necessary. If the suit was between the parties to the contract it could have been given in evidence under a common count. But if it was otherwise, I presume it would at common law be held that the subsequent promise should be specially counted on.

In any aspect, I am well satisfied that under our system a subsequent promise could not be given in evidence unless averred in the petition or made the subject of a special averment in a replication; perhaps in that case the replication might be considered in the light of an amendment. I believe the judgment ought to be reversed and remanded, to give the plaintiff in the court below an opportunity to amend his petition and set up the subsequent promise.

It will, however, be well to lay down some rules as to what will be a sufficient subsequent promise or acknowledgment to

take the case out of the bar of the statute. By an express provision in our statute, "that when any action may appear to be barred by any law of limitation, no acknowledgment of the justice of the claim, made subsequent to the time it became due, shall be admitted in evidence to take the case out of the operation of the law, unless such acknowledgment be in writing, and signed by the party to be charged thereby." This statutory provision was designed to put an end to the almost infinite variety of decisions, as to what amounted to a subsequent promise. But the better opinion seems to be, that the only difference introduced by the proviso is as to the character of the proof of the acknowledgment, and not as to what words would constitute such acknowledgment. In Story on Contracts, sec. 1013, the following doctrine will be found: "The operation of the statute may also be frustrated by an acknowledgment of the existence of the debt, or by a new promise to pay it. This promise, or acknowledgment, is considered as a new promise founded upon the previous debt as a consideration, and must be sufficient in itself to support an action for the [557] debt independent of the original promise. The acknowledgment is to be considered, not as a revival of the original agreement, but as a new and distinct agreement in itself." And the same author proceeds in the next section to illustrate the text. "If there be no express promise to pay, a promise may be raised by implication of law from the acknowledgment of the party. But such an acknowledgment must contain an unqualified admission of the debt, and a willingness to pay it. An acknowledgment of the original justice of the claim is not sufficient to take the case out of the statute, unless accompanied with an admission of the party's present liability. If the acknowledgment be conditional, the remedy only revives on the performance of the condition. It is not necessary, however, that any specific sum should be acknowledged to be due, if the acknowledgment be sufficiently broad to include the debt, and sufficiently particular to show that it was the subject matter of the contract." The supreme court of the U. S. in the case of Moore v. Bank of Columbia, 6 Pet. 86, maintained and laid down the rules to be the same as

cited from Story. The statute of 9th George IV, ch. 14, contains a provision that in its terms, so far as it relates to a subsequent promise, is not materially different from our own, and the decisions of the English courts under that act appear to harmonize with the doctrine laid down by Story, and by the supreme court of the United States. From which it appears that there must be an acknowledgment of the debt existing and an expression of a willingness to pay it; both must concur; an acknowledgment of the debt is not sufficient; but there must be an expression of a willingness to pay. Do these two ingredients, necessary to make an acknowledgment within the statute, concur in Coles' letter to Kelsey? It appears to me that it does so appear, that is, if the letter referred to the two notes exhibited in the petition. And I believe that the presumption of law, in the absence of proof of any other transaction of the character referred to in the [558] letter, would be that the letter had reference to those notes and to no others. This presumption, if not rebutted, would then assume the character of full proof. In the letter he not only recognizes the existence of the debt, but also declares his intention to pay.

If the promise or acknowledgment contained in the letter had been set out in the petition, I should have felt no difficulty in affirming the judgment; but because that was not done, and nothing appearing in the petition to let in the letter, so as to make the *allegata* and *probata* correspond, I believe the judgment ought to be reversed and the cause remanded.

Mr. Justice WHEELER dissenting.

It appears from the record that " the counsel for the plaintiff, and one of the counsel for the defendant, submitted said case without a written agreement so to do, on the plea of the statute of limitations, and the letter marked X," etc. See record. This letter marked X is the letter referred to as containing the acknowledgment relied on to take the case out of the operation of the statute.

The case was thus first submitted to the court, a jury being waived, by the consent of parties, for the purpose of obtaining

the judgment of the court upon the only subject of controversy between them — the sufficiency of the acknowledgment contained in the letter to take the case out of the operation of the statute.

By the permission of the court a jury was afterwards called, and the notes sued on and the letter referred to were given in evidence to the jury without objection.

No objection to the sufficiency of the petition was made and relied on in the court below.

These facts I regard as most material, and as entitled to exert a controlling effect in the disposition of the case. I fully concur with the court in the opinion that the letter referred to and embraced in the statement of facts does contain a sufficient acknowledgment to take the case out of the [**559**] statute; and further upon this point I deem it unnecessary to express an opinion.

But in view of the facts I have stated, and of what I conceive to be the well settled law applicable to the case, I find myself constrained to dissent from the opinion and decision of the court reversing the judgment and remanding the case, upon the following grounds:

1. I regard the submission of the case to the court, and subsequently to the jury, without objection to the sufficiency of the petition or the admissibility in evidence of the letter, as a waiver of any objection which might have been urged to the petition for the want of an averment of the subject matter of the letter, or to its admissibility in evidence. And now to reverse and remand the case merely to supply this averment, is, it seems to me, to reverse and remand a case for the sole purpose of supplying that which appears upon the record to have been waived by one party, and proved without objection by the other.

When the parties have chosen not to make a question, I do not deem it our province to make one for them. They may have had the best of reasons for not wishing to controvert that point in the court below, and may have acted upon the most deliberate agreement or the most honorable understanding, mutually obligatory. Parties are supposed to know their

rights and to be capable of conducting their causes, without requiring the judges so far to depart from their judicial duty as to become their advisers. And when a party has seen proper to waive an objection to pleadings or evidence, which he might have urged, I do not deem it the part of judicial duty to interpose *ex officio* to prevent him. That would be, to borrow an expression of Chief Justice Marshall, for the courts to assume the guardianship of adults as well as of infants. I conceive it to be the province of the courts to adjudicate the matters actually litigated by parties, and none others; to decide the case in controversy between the parties, not to make for them a new and different case, [560] and decide upon matters not in controversy. Where there is no controversy, there is no occasion for an interposition of judicial authority.

Especially do I conceive it the sole province of an appellate court to adjudicate the very case which was presented to and decided by the court below, and upon the very points and questions upon which the court there decided. To entertain and decide the case here upon questions never presented to or decided by the court below is, in so far as the questions considered are thus originally presented in this court, most manifestly the exercise of original jurisdiction and a departure from the constitution of the appellate court. As has been said by a learned judge, "appellate jurisdiction necessarily requires re-examination of what had been before decided in the court below."

The point upon which this case is here decided was never made or intimated in the court below. In reversing the judgment, this court has not adjudicated any one matter appealed from. It has not adjudged any one order or decision of the court below to be erroneous. But the judgment of that court is reversed alone upon a question in respect to which there is no pretense that it made an erroneous or any decision whatever, or that it was desired or afforded an occasion to make a decision. On the contrary, that question not having been there presented, but being in effect waived by the parties, the court was precluded from its consideration. There having been no decision upon the question below, there could be no

appeal, and hence no exercise of appellate jurisdiction as to that question, by any rules which define and prescribe the limits and course of appellate jurisdiction. Judicial cognizance is first taken of the question in this court. As to this question, then, *upon which alone the case is made to turn and is expressly decided*, the jurisdiction here taken can be no less than the clear and undoubted exercise of original jurisdiction. And I with deference submit, is it not violative of the constitution of this as an appellate court?

[**561**] It has been said by a very learned court (the court of errors and appeals in New York, 2 Wend. 145–6) to be its settled practice "not to review a decision or judgment of the court below, where the question has not been actually passed upon or distinctly presented to the court below," because "it was evidently the intention of the framers of the constitution that it should be strictly an appellate court." It will not be questioned that, by our constitution, this is *strictly an appellate court*. Yet we do not hesitate to review and reverse a judgment *upon a question which was never passed upon or presented to the court below*.

The same learned court, on another occasion, said, "The rule is undoubtedly salutary that no party shall be permitted to pass the court below in silence, and thereby make this a court of *original*, not *appellate* jurisdiction. Neither will this court listen to objections which, if made in the court below, might have been removed by the exercise of the ordinary powers of the court, previous to or at the hearing." Beekman v. Frost, 18 Johns. 565.

This I conceive to be the established, uniform course of all appellate courts. In the case just cited, Chief Justice Spencer stated the principle to be extracted from the cases decided in that court, to be, in substance, that no party shall be allowed to surprise or mislead his adversary, and that it would operate as a fraud to permit a party to seize a point in the appellate court passed without objection in the court below, and thus impose upon the opposite party the accumulated costs of the whole action; when, if the objection had been made, it might have been obviated by proof or amendment in the court be-

low. In the case of Gelson v. Hoyt, 13 Johns. 562, the same court refused to hear the demurrer argued, because the counsel had purposely declined arguing it.in the court below, and had thereby deprived the plaintiff below of a right which would have been granted to him — the right of having the pleading demurred to amended, if vicious. In Anderson v. Roberts,. [562] 18 Johns. 518, Van Ness, J.,said: "It has been settled by this court, that matters not suggested at the hearing, nor decided upon by the chancellor, cannot be made the ground of error here."

An eminent judge has said, "It is an established rule, founded on the soundest principles of justice, that a party shall not be permitted to reverse a judgment or decree on an objection not made in the court below." And this opinion is supported by a particular reference to the opinions and decisions of Lords Eldon and Redesdale, the house of lords, the courts of the last resort in New York and Pennsylvania, and the supreme court of the United States. 9 Pet. 524–5. "When the · opportunity of objection is passed by in the court below it is taken to have been waived, 2 Sch. & Lef. 713; 12 Wheat. 18; S. P. 11 Wheat. 209, 210, 211; 7 Pet. 98; 2 Binn. 168; 12 Serg. & Rawle, 103, unless the defect in the record is one which could not have been cured or amended in the court below, if the objection had been made before it was removed. 4 J. R. 602; 14 id. 560; 16 id. 353; 18 id. 558, 559; 2 Dow P. C. 72." And see 7 Port. 270; 4 Sm. & Marsh. 113; 8 Miss. 136, 505; 1 Sm. & Marsh. 326; 7 Miss. 476; 1 Greenl. 76, 215; 2 Brock. 75; 7 Ala. 42.

References to the same effect might be multiplied, but these will suffice to show that this is the settled, uniform practice of all appellate courts. Moreover, it has been recognized and· acted on as the law of this court. Hansborough v. Towns, 1 Tex. 58; O'Connor v. Towns, id. 107; Crosby v. Houston, id. 203; Jones v. Black, id. 527.

My view of the law thus settled by the decisions of this and, I believe I may add, every other appellate court, will not permit me to disregard the evidence contained in the letter in question, which was first submitted to the court by the agree-

ment of the parties, then given in evidence to the jury without objection, and now, being incorporated in the statement of facts, forms a part of the record before us, [**563**] merely because the subject matter of that evidence was not averred in the petition, and when no objection was made to the petition in the court below for the want of such an averment.

Had the point upon which the judgment is now reversed been objected to in the court below, the defect, if one, would doubtless have been immediately cured by an amendment of the petition or a replication of the new promise. And it is, in effect, admitted by the court, and cannot be doubted, that either, under our practice, would have removed the objection. But the omission or refusal of the defendant to make the objection below has enabled him, under this decision, to throw upon the plaintiff all the expense and delay of this appeal, and the further delay, expense and vexation of another trial, merely to remove an objection which, if originally made, would have been immediately cured in the court below. And should the case be again brought before us on appeal, our legal acumen may then discover some new objection, not before taken; for which the case may again be reversed and remanded upon similar reasons to those which have now controlled its disposition, and will then give it all the force and authority of a precedent. The same process may be repeated again and again, indefinitely. And thus the assertion of every right which a party may unfortunately be compelled to litigate may be attended with interminable delay, expense, harassment and vexation. I have no wish to trace the evils consequent upon such a course of procedure; but they are, it seems to me, sufficiently apparent and serious of themselves to suggest a doubt of its compatibility with a system of legal rules, which have for their object the speedy redress of injuries and attainment of justice.

It will be readily seen that the principle I have stated as maintained in the authorities cited does not conflict with the other principle, which they equally maintain, and which has also been recognized by this court, 1 Tex. 225, 229, 230, [**564**] that where there is no cause of action set forth, or where the foundation of the action has manifestly failed, and

the objection goes to the merits and manifest justice of the case, and could not be obviated by proof or amendment in the court below, the appellate court will not permit a recovery to stand, though the objection was not taken below. In such a case, the appellate court does not undertake to revise the judgment upon questions not made in the court below; but, looking to the merits and the foundation of the action upon which the court below has exercised its jurisdiction, and perceiving that the plaintiff has set forth no cause of action, and has alleged in his petition no matters which, if true, entitle him to the relief prayed, or to any relief, and hence that his petition presents nothing which can constitute the basis of a judgment, or afford a foundation for the exercise of the jurisdiction of the court below in proceeding to adjudicate its contents, and that the objection is incurable by proof or amendment, and must therefore ever present an insuperable barrier to a recovery, the appellate court either proceeds itself to give such judgment as the court below ought to have given, or remands, with instructions to the court below to dismiss the case, as not constituting the proper subject of an adjudication in either court. 18 Johns. 516, 544, 559. But where the plaintiff has set forth a title or cause of action inaccurately or defectively, it is cured by verdict. And it is the settled rule, applied to courts of equity as well as law, that the appellate court will not reverse a judgment or decree for a defective averment in a declaration or bill, to which a demurrer was not taken and relied on in the court below, when the plaintiff has set out a substantive cause of action. 9 Wheat. 594; 11 Wheat. 121.

The present manifestly does not come within the class of cases in which the foundation of the action has failed, and the objection, if made, could not have been obviated by proof or amendment in the court below; and that the court here did not so regard it is equally manifest, when they remand [565] the case for the express and sole purpose of having the objection obviated, or rather the supposed defect cured, by an amendment in the court below. But this case does come, as I conceive, precisely within the class of cases in which the refer-

ences made do, I think, show that it is the well settled law here and elsewhere that the appellate court will not take cognizance of questions not passed upon or presented to the court below, or entertain an objection here which, if made below, might have been obviated by proof or amendment in that court. As was said by the supreme court on a similar question, "the case is not to be considered as if before us on a demurrer to the declaration. The want of an averment, so as to let in the proof of usage, cannot now be objected to the record. The evidence was admitted without objection, and now forms a part of the record, as contained in the bill of exceptions. Had an objection been made to the admission of the evidence of usage, for the want of a proper averment in the declaration, and the evidence had, notwithstanding, been received, it would have presented a very different question." 9 Wheat. 594, 595. And precisely so in the case before us. *The case is not to be considered as if before us on a demurrer, or exceptions to the petition. The want of an averment so as to let in the proof of the acknowledgment or new promise cannot now be objected to the record. The evidence was admitted without objection, and now forms a part of the record as contained in the statement of facts. Had an objection been made to the admission of the evidence of the new promise, for the want of a proper averment in the petition, and the evidence had notwithstanding been received, it would have presented a very different question.* And by thus substituting the words "*new promise*" for the word "*usage*" in the opinion just cited, we have the opinion of the supreme court of the United States upon the identical case presented in the record before us. It cannot require further illustration to show that the principle applicable to both is the same in point of law. [566] The authority of that tribunal, the names and judicial reputation of the jurists who have ever acted on this rule, and the previous recognition of it by this court in repeated decisions, will, I trust, be esteemed sufficient to justify my adherence to it on the present occasion.

I can but regard it as a rule of constitutional law deducible from the organic law of this court and obligatory upon it;

and the reversal of the present judgment, under the circumstances, as the exercise of original jurisdiction in derogation of the rule. But whether it be the exercise of original or appellate jurisdiction, it gives to an appeal the effect of a demurrer or exception to the petition, and an objection to the admissibility of evidence, and, is incompatible with the established principles and usages of law, as administered in those appellate tribunals from which we have adopted our rules of decision, and seems to derive no sanction from any precedent or authority.

2. But I cannot concur in the opinion and judgment of the court, for the further reason that it was not, as I conceive, necessary to set forth the new promise by averment in the petition.

I do not propose to enter upon the discussion of this question. I regard the law as too well settled now to admit of controversy. Deeming, therefore, a particular examination of the numerous authorities in point unnecessary, I shall content myself with a single reference to a work of acknowledged authority professedly treating of this subject.

Mr. Angell, in his treatise on the limitations of actions at law and suits in equity, etc., p. 315, sec. 4, 2d ed., having reference to the English and American cases and decisions, lays down the rule without any qualification, that, "*in declaring in the case of a new promise or acknowledgment, the declaration is upon the original promise.*"

That this is the well settled rule established by the great current of both the English and American decisions, I can entertain no doubt.

[567] There is, however, a class of cases which, according to the decisions of the English and some of the American courts, form an exception to the rule. These are where the old and new promise are not between the same parties; as where the new promise relied on to take the case out of the statute was made to the *executor* of the person to whom the original promise was made. In this class of cases, where the action was brought by the *executor* upon a promise to his *testator*, to which the defendant pleaded the statute, and, to take

the case out of its operation, evidence of a new promise to the *executor* was relied on, it has been held that the action could not be maintained, because the evidence of the new promise to the executor *did not maintain the issue,* which was upon a promise to the *testator.* 2 Ld. Raym. 1101; 2 H. Black. 562; 1 Barn. & Cress. 284 (8 Eng. Com. Law, 67); 6 Taunt. 210; Jones v. Moore, 5 Binn. (Penn.) 573. Now this is a class of cases referred to in support of the opinion of the court, or rather of the opinion upon which that opinion seems founded; but these cases differ essentially in their facts from the present, and the principle which they assert is not the general rule, but confessedly an *exception* to the rule. Nor is the justice of this exception universally conceded. In Jones v. Moore, *supra,* Breckenridge, J., declared it as his opinion that the acknowlment or new promise ought to be *replied;* that such a replication would be no *departure,* and the evidence would be admissible. And the supreme court of Massachusetts, it is said, have been unable to perceive the *technical difficulty* in this class of English cases, and the practice in that state has always been in all cases to declare on the original promise. Angell, 316; Little v. Blunt, 9 Pick. 488. Hence it is evident that even the exception recognized by the English courts in this class of cases is occasioned by a technical rule in their pleadings, not universally admitted even where that system of pleadings has been adopted. But the present does not come within the class of English cases here referred to. **[568]** In this case the old and the new promise were both made to the same party, the plaintiff below, and hence this "*technical difficulty*" is not presented in this case. But if it were, it ought, I imagine, to be as little embarrassing to this court as it has been to the supreme court of Massachusetts.

The case decided in South Carolina, and cited and relied on by the court in this case with so much confidence, differs, as I conceive, materially from the present. In the first place, that was the case of an *executor,* and might be supposed properly to come within the *exception* to the rule just stated. The old and new promise were not between the same parties. The suit, too, was upon an assignment made after the new promise,

which seems to have materially affected the decision. And again, in that case the statute had interposed a complete bar to an action upon the old promise before the acknowledgment or new promise was made. The old promise had ceased to have any *legal* obligation and constituted only a *moral* obligation, sufficient merely to serve as the consideration for the new promise. In such a case there seems to me to have been more reason for considering the new promise the cause of action. It alone gave the remedy. It gave vitality to that which was dead in law, and might, therefore, be said to be effectually the cause of action. Not so in the present case. In this case the statute had not barred the original promise or cause of action when the new promise was made. But at the date of the new promise the old promise existed in·full force, with all its original legal effect and obligation — neither of the notes sued on having been then due but a little more than one year. It could then, it seems to me, with no propriety be said to be a mere *moral* obligation or duty, sufficient only as a consideration to support the new promise. It was not a *moral* obligation merely, but a valid, subsisting *legal* obligation, on which the plaintiff might then have brought suit as his cause of action, without reference to the new promise. It did not need the new promise to give it vitality. The only effect of the latter [**569**] was, not to give a cause of action, for one manifestly existed without it, but simply, in the language of the statute, " to take the case out of the operation of the law;" that is, operating upon the cause of action then existing, to obviate the effect of the statute for the time which had then elapsed, and to place the case upon precisely the ground it would have occupied in relation to the statute had the cause of action just then accrued. That, obviously, was *then* the effect of the new promise, if it had any effect; and I am aware of no principle by which its effect could, afterwards, at any particular point of time, have become transformed into something else, unless we are to adopt the singular position that the old promise continued to be the cause of action for several years after the new promise was made, and until just four years had elapsed from the maturity of the former, and then,

at that exact point of time, by some kind of "legal magic," the former was divested of and the latter invested with the essential quality to constitute the latter thenceforward the cause of action. But the view which involves such a proposition, in whatever form announced, presents, I think, a refinement too subtle to be seriously entertained as a practical and legal truth. The original cause of action, then, in this case was never barred; nor was the right of action upon it ever, for one moment, lost or suspended, up to the period of the commencement of this suit. In this view, therefore, it seems to me, as well as in view of the general rule stated, the action was well brought upon the original promise in this instance. But where the old debt was barred when the new promise was made, as in the South Carolina case cited, and others in which language somewhat similar, though not inconsistent with the recognized general rule I have stated, has been used, I readily agree that the new promise may be considered as, in one sense, the cause of action. In such a case, as was said by Wilde, J., in Little v. Blunt, before cited: "When the statute is pleaded, the plaintiff may reply the new promise, [570] and when the pleadings assume this shape the original promise is apparently the cause of action; but it is the new promise alone that gives it vitality, and that, substantially, is the cause of action." Yet in this case it was held, conformably to the established rule, that *the new promise being implied from the original consideration*, it was necessary to declare on the original consideration. *The new promise could not be supported on the ground of a new consideration as an independent, substantive promise.* Id. A declaration upon it alone, without setting out the original consideration, would therefore be bad. Upon an acknowledgment of the justness of the original debt, a promise is implied. And though it may be said that the new promise is the cause of action in that sense in which it gives a remedy where it had been lost, yet it is not so in that sense in which it is evidence of the consideration, or the fact and amount of the original indebtedness. So that, whatever may be said of the cause of action, it is the original consideration which has served to support both the old and new promise, and which

constitutes the *foundation* of the plaintiff's right. And the proposition that the new promise is the cause of action seems, to borrow the language of Mr. Justice Johnson, 5 Peters, 522, "rather a metaphysical position than a practical and legal truth." When the statute has been pleaded, it seems to me, as stated by Lord Ellenborough, 16 East, 420, that "the only question is, whether the defense given by it has been waived." And this, it seems, would have been the prevailing view had the pleadings in the earlier cases been so framed as " to raise the question of waiver." 13 Eng. C. L. 275.

In taking a distinction between an acknowledgment or new promise made before, and one made after the period of limitation had elapsed, I do not follow the imperfect and unsafe guidance of my own unassisted, hasty first impressions, nor rely alone on my own reasonings and conclusions, unsupported by authority. The distinction was taken by Holt, Ch. J., [571] in one of the earliest and leading cases upon the statute. Heylin v. Hastings, Ld. Raym. 389; and in Scales v. Jacob, 13 Eng. C. L. 85, Burrow, J., said: "The acknowledgment which has been made within six years keeps the debt alive, according to all the cases, and is very different from the acknowledgment or promise made after the expiration of that time. Such a promise creates a new obligation, and must therefore be taken with all its qualifications." He cites the opinion of Lord Holt, just referred to, and concludes that "there seems to be a solid and recognized distinction between an acknowledgment made before the expiration of the six years, and an acknowledgment after." And Park, J., appears to have been of the same opinion. It was, however, a divided court; and although the distinction taken appears to my mind a clear and sound distinction; one the reality of which I cannot doubt, and upon which, if necessary, I could not hesitate to act, yet I do not rest my judgment upon it in the present cases, since its soundness has been questioned, and it is not material to the view I entertain of the law of this case, as resting on other grounds, the soundness of which, when well considered, will not, I think, admit of a question. I have, therefore, only adverted to it in this connection, as making one

of several points of difference between this case and the South Carolina case, so much relied on. And whatever may have been the language of Judge Oneal in that case, as the decision was upon a state of facts differing in other respects materially, as I conceive, from the present, I cannot regard that case as a precedent for this. .

A brief reference to the rulings in the English cases cited will show with how much reason they can be regarded as authorities in support of the present decision.

In the first of these, Pittam v. Foster, 8 Eng. C. L. 67, Abbott, Ch. J., reviews the cases to which I have referred as constituting the exception to the general rule, and adopts and applies to the facts of that case the principle of [572] those cases. The action was brought against Foster and Norris and wife, upon promises made by Foster and the wife before her marriage; the defendants pleaded the statute, whereupon issue was joined, and the plaintiff relied upon an acknowledgment made by Foster after the marriage of Norris and wife; and the question was, whether that supported the issue which was upon a promise while the wife was sole; and under the decisions referred to, and especially the case of ·Ward v. Hunter, 6 Taunt. 210, which was an action by an *executor* on promises made to his *testator*, determined when Lord Ch. J. Gibbs presided, " than whom," says Abbott, Ch. J., " no judge was ever more perfectly acquainted with the rules of pleading," the court held that it was not evidence *to support the issue.* And this was the only question decided in the case.

In Scales v. Jacob, 13 Eng. C. L. 85, the question was as to the sufficiency of the acknowledgment to take the case out of the statute. ' The new promise was to pay *when of ability*, and the only point decided was that, to enable the plaintiff to recover, he must also. prove the defendant's ability.

In Tanner v. Smart, 13 Eng. C. L. 273, where the plaintiff relied on a like conditional promise in these words: " I cannot pay the debt at present, but I will pay as soon as I can," the question was thus stated by Lord Tenterden, Ch. J.: " The point is, whether this is such an acknowledgment as, without

proof of any ability on the part of the defendant, takes the case out of the statute." And it was held that it was not.

In Hurst v. Parker, 1 B. & A. 91, it was decided that the principle which makes an acknowledgment an answer to the plea of the statute is not applicable to actions of trespass.

With what reason or justice these cases can be said to support the decision in the present, I need not express an opinion. The question as to the necessity of declaring upon the new promise, in a case like the present, did not arise and [573] was not decided in either of those cases. The question considered in the present case is, was the suit well brought on the original promise? Or ought it to have been upon the new promise? The court has determined the latter, and I submit that neither of the cases cited is an authority for that proposition. The settled rule of law in the courts where these cases were determined was otherwise, and in no one of them was that rule disturbed or its soundness questioned. Nor is there any just ground for the supposition that there is any conflict between the earlier and more recent decisions of those courts upon this question. On the contrary, in a more recent case than any of those cited, Upton v. Else, 22 Eng. C. L. 451, adverting to the rule which requires the suit to be brought upon the original promise, Best, Ch. J., said: "We cannot get over it." It was always the rule in the English courts and has never been departed from in a case like the present. How a court in which the common law is the rule of decision, can "*get over*" this rule of those courts whose decisions afford the highest possible evidence of what the common law is, without assuming an authority totally subversive of the authority of the best established precedents and the most solemn adjudications, an authority, indeed, superior to the law of the land, I am, I must confess, at a loss to comprehend.

The New York case cited, Sands v. Gelston, 15 Johns. 511, is equally foreign to the question. So far from being an authority for the position that the plaintiff must declare upon the new promise, in the opinion of the court by Spencer, J., there is not even an allusion to that proposition; and the only

question considered and decided is the same as in Scales v. Jacob and Tanner v. Smart, just cited, as to what is a sufficient acknowledgment to take the case out of the statute.

The case of Bell v. Morrison, 1 Pet. 351, is an authority upon the question in Sands v. Gelston, as to when the acknowledgment will be held sufficient, which it cited and approves. The [574] question was one of evidence, not of pleading. In the very elaborate opinion of the court by Mr. Justice Story, I have not been able to find the expression of an opinion as to how the promise ought to be laid in the declaration. That question did not arise and was not decided in the case.

To pursue the inquiry further would be an unprofitable consumption of time. It is enough for my purpose that, as I understand them, no one of the cases cited is a precedent for this in point of fact; and in point of law, no one of them conflicts with the rule of the common law applicable to this case. Nor is that rule, as I conceive, the result of any technicality peculiar to the English system of pleadings. It was not adopted in reference to any particular system or rules of pleading. It is a rule of the common law engrafted upon our jurisprudence, as binding and obligatory here as in England or any other state of this Union in which the common law is the rule of decision. It is the *exception* to the rule, as we have seen, which has been occasioned by an adherence in England to the technical rules of pleading.

I do not perceive that the question as to the manner in which advantage should be taken of the statute is presented by the record in this case. The statute was pleaded and relied on as a defense in the court below, and there has been no question that it was well and rightly taken advantage of. A discussion of that question is therefore uncalled for by anything contained in the record before us. This question, however, was presented and decided at an early day in the present term in the case of Petty v. Cleveland, *ante*, p. 404, and I have heard nothing to weaken my conviction of the correctness of the rule then stated, that a defendant who would avail himself of the defense afforded by the statute must make and

rely upon it as a ground of defense in the court below. The *manner* or *form* of setting up the defense, in our practice, I regard as quite immaterial. If the fact appears upon the face of the petition, it may be taken advantage of by demurrer or exception. But if it does not so [**575**] appear. I know of no way in which it can be brought to the knowledge of the court but by pleading it. I regard the statute as a *shield* and not as a *sword*, as has been said; as a *defense*, which to avail a party he must avail himself of. And when he does so, whether by plea or exception, the plaintiff may reply the new promise or any exception which will take the case out of the operation of the statute. A replication is, in my opinion, as much a part of our system, by the force of positive law, as it is of the English, or as it was of the system existing here anterior to the adoption of the common law. In the case of Underwood v. Parrott, *ante*, p. 168, where this, I think, is shown, I felt constrained to yield my own opinion of its necessity to what I believed to be the sense of the profession, a long-acquiesced-in practice, and the opinion of a majority of this court. Still, under the rule in that case, a replication is *allowable*, but the evidence was admissible without it, upon the principle (to use the expression of Lord Ellenborough, 1 Barn. & Ald. 463) " of rebutting the statute of limitations." With so much of the opinion in that case, however, as dispenses with the necessity of a replication to let in evidence of new matter in avoidance of the answer, I here take occasion to say, I have never been well satisfied. I believe that the proofs under our pleadings, no less than under those of the courts of common law or chancery in England, ought to conform strictly to the allegations of the parties; and when the proofs go to matters not within the allegations, they ought, if objected to, to be excluded. Nor do I think it practically very material by what *name* the *allegata* in *confession and avoidance* of the answer may be called, provided the end in view be effectually attained. If the views upon that subject which appear to control the present case (to the facts of which I think them inapplicable), and which assign to an *amendment* the office of a *replication,* had been suggested as the views of any member of

this court, when the case of Underwood v. Parrott was under consideration, where they clearly were [576] applicable, I should gladly have acquiesced in them as securing, under another name, what I regard as a principle of the very first importance in our pleading and practice. And while, for the reasons I have stated, I cannot admit their applicability to the facts of the present case, I shall be ready in every proper case, consistently with these views, to hold the rule inviolable, that where new matter in avoidance of the subject matter of the answer is intended to be relied on in evidence, it must be replied or alleged upon the record, under the name, if it be preferred, of an amendment to the petition, or the evidence, if objected to, must be excluded. And on this point, I shall most cheerfully acquiesce in considering the case of Underwood v. Parrott as now overruled by this case.

Finally, the present is not, as I conceive, now an open question in this court. It was considered and expressly decided by the unanimous opinion of the late supreme court in the case of Selkirk v. Betts, Dallam, 471. The court in that case say: "The suit was well brought on the note. It was not necessary for the plaintiff to have noticed any subsequent promise of the makers to pay its amount or the balance to him." And again, "a promise to pay a debt barred by prescription or a statute of limitations, or a promise to pay the assignee or holder of a *chose in action*, is not a new contract, nor is there any need for a new or cumulative cause or consideration to support it." The suit in the present case must be considered as having been brought under the direct authority of this decision; a decision made as long ago as the January term, 1842; and now for the first time questioned. On a decision of that court upon this question I am content to repose my judgment. And even if the court in that case were inaccurate in their statement of the law, I should not feel justified in visiting upon an innocent party the errors of the court of the last resort. When that court has decided, it is, as I conceive, the right of every one to adopt and act upon its decisions as the settled law of [577] the land, until the law-making power shall have prescribed a different rule. The de-

(511)

cisions of the supreme court I regard as the settled law of this court. They have been referred to and treated as such in rrepeated decisions. They have been regarded by this court, and, I think, justly, as settling some of the most important principles and rules of property, upon grounds and reasons, which, having been acquiesced in for a series of years, and having doubtless exerted an influence upon legislation as well as private contracts, and rights having been vested under them, this court has not felt at liberty to question. 1 Tex. 770, 788. Similar considerations constrain me to respect the decision just cited. It rests upon as high authority as any decision of this court. And I should be quite as slow to disturb it as our own more recent decisions, which have become less extensively known and acted on, and which might therefore be disturbed with less danger of putting in jeopardy and doubt the rights of person and property.

In a case like the present, where no considerations of justice seem to require a departure from former decisions, it seems to me that we may well be, in the language of the supreme court of the United States, "entirely satisfied to administer the law as we find it." It is enough for me that the rule of law has been settled; and upon such a question, especially, it seems to me that the *certainty* of the law, which alone can afford security and repose to every valued right, is a consideration of paramount importance. It matters very little, I think, whether the new or the old promise be considered the cause of action, *provided we have one uniform and certain rule of decision* by which to attain the real and substantial justice of each case. But I cannot conceive that the ends of justice will most likely be subserved, or that our own judicial system will most likely ever attain to any degree of certainty, harmony or consistency, by needlessly innovating upon those rules which have been well and satisfactorily settled; or by subverting any one of the few [578] adjudged principles, which a few years have sufficed to furnish for our guidance, in the endeavor to harmonize the principles of apparently conflicting legal systems.

It is not the importance in themselves of the *questions* discussed in the opinion, but of the *principles* involved in the

judgment of the court in this case, which has seemed to me to demand a statement of the reasons which constrain me to withhold my assent. From the view I have taken it results, and it is therefore my opinion, that there is no error in the judgment, and that it ought to be affirmed.